Todd A. Burgess (AZ 019013)
Lindsi M. Weber (AZ 025820)
THE BURGESS LAW GROUP
3131 East Camelback Road, Suite 224
Phoenix, Arizona 85016
Tel. (602) 806-2100
Email:  Todd@theburgesslawgroup.com
        Lindsi@theburgesslawgroup.com

Attorneys for HonorHealth

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| SPG HOSPICE, LLC, | Case No. 2:22-bk-02385-MCW |
| SCOTTSDALE PHYSICIANS GROUP, PLC, | Case No. 2:22-bk-02388-MCW |
| UNITED TELEHEALTH CORP., | Case No. 2:22-bk-02409-SGH |
| Debtors. | **(Motion for Joint Administration Pending)** |
| HONORHEALTH, Movant, v. SCOTTSDALE PHYSICIANS GROUP, PLC, Respondent. | **EMERGENCY MOTION TO COMPEL IMMEDIATE ASSUMPTION OR REJECTION OF EXECUTORY HOSPITAL-BASED SERVICES AGREEMENT; AND FOR RELIEF FROM AUTOMATIC STAY**<br><br>**Expedited Hearing Requested** |

This motion is filed by HonorHealth ("HonorHealth"), a creditor and party in interest in the above-captioned chapter 11 case (the "Bankruptcy Case") filed by Scottsdale Physicians Group, PLC ("SPG" or the "Debtor"). Pursuant to 11 U.S.C. § 365(d)(2), Rule 6006, Fed. R. Bankr. P., and Local Rule 6006-1, HonorHealth

respectfully requests that the Court enter an order compelling SPG to immediately cure, assume, and provide adequate assurance of its ability to perform all of its obligations under, that certain *Hospital-Based Services Agreement Between HonorHealth and Scottsdale Physicians Group, PLC*, dated January 1, 2019 (the "HSB Agreement"), or immediately reject the HSB Agreement to allow HonorHealth to locate and contract with a new group or provider that can provide the services required by HonorHealth. Pursuant to 11 U.S.C. § 362(d)(1), Rule 4001, Fed. R. Bankr. P., and Local Rule 4001-1, HonorHealth also requests that the Court grant HonorHealth presently effective relief from all applicable stays and injunctions in the Bankruptcy Case, including the automatic stay under 11 U.S.C. § 362(a) to allow HonorHealth to terminate the HSB Agreement if SPG is unable to immediately cure, assume, and provide adequate assurance of its ability to perform all of its obligations under, the HSB Agreement post-petition.

This motion is supported by the accompanying Memorandum of Points and Authorities and the exhibits attached thereto.

Dated this 26th day of April, 2022.

**THE BURGESS LAW GROUP**

By: /s/Todd A. Burgess
Todd A. Burgess (AZ 019013)
Lindsi M. Weber (AZ 025820)

3131 East Camelback Road, Suite 224
Phoenix, Arizona 85016
Tel. (602) 806-2100
Email: todd@theburgesslawgroup.com
lindsi@theburgesslawgroup.com

Attorneys for HonorHealth

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL AND PROCEDURAL HISTORY.

1. On April 19, 2022 (the "Petition Date"), SPG filed a voluntary petition under chapter 11 of the title 11 of the United States Code, 11 U.S.C, §§ 101 *et seq.* (as amended, the "Bankruptcy Code") initiating the Bankruptcy Case.

2. No trustee, examiner or official committee of unsecured creditors has been appointed.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This motion presents core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (G). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

4. SPG provides hospitalist services to hospitalized patients through the services of its employees and contracted physician and non-physician providers.

5. HonorHealth operates HonorHealth Scottsdale Shea Medical Center ("Hospital"). *See Declaration of John Pope, M.D.* (the "Pope Declaration"), ¶ 1. A true and correct copy of the Pope Declaration is attached hereto as Exhibit 1 and is incorporated herein by this reference.

6. Hospital is a full-service hospital with 427 beds. *Id.* at 2

7. In order to operate its emergency department and hospital services, Hospital must make certain hospitalist services available to its patients. *Id.* at 3.

8. Hospital and SPG entered into the HSB Agreement, which sets for the terms and conditions under which SPG agreed to provide professional hospitalist services to patients at Hospital. A true and correct copy of the HSB Agreement is attached hereto as Exhibit 2 and incorporated herein by this reference. *Id.* at 5.

9. The HBS Agreement requires SPG to "provide hospitalist services at Hospital for Hospital's patients twenty-four (24) hours a day for three hundred sixty-five (365) days per year." *Id.* at 6.

10. Per the HBS Agreement, SPG is obligated to employ and/or contract physician and non-physician providers to provide the necessary services for Hospital's

patients. *Id.* at 7.

11. In early April 2022, SPG notified HonorHealth that SPG had, for several months, failed to pay the physicians it contracted to provide the services required by the HBS Agreement. *See* Declaration of Lisa M. Replogle, CPA (the "Replogle Declaration"), a true and correct copy of which is attached hereto as Exhibit 3, ¶ 5.

12. The Debtor asked HonorHealth to loan $3,500,000 to Debtor for the specific purpose of paying the physicians that were providing services to Hospital under the HSB Agreement. *Id.* at 6.

13. To induce HonorHealth to make the loan, the Debtor, through its principal, Dr. Nima Ghadimi ("Ghadimi") represented to HonorHealth that all of the loan proceeds would be used to compensate Physicians for providing services at Hospital under the HBS Agreement. *Id.* at 7.

14. To induce HonorHealth to make the loan, the Debtor and Ghadimi represented to HonorHealth that the Debtor had total assets of approximately $14 million, including accounts receivable of $10.3 million and a note payable from Ghadimi to the Debtor in the amount of $2.9 million. *See* Replogle Declaration, ¶ 8.

15. SPG's chapter 11 petition lists total assets of $0 - $50,000. *See* Dkt. 1, Case 2:22-bk-02388-MCW, page 3 of 18.

16. HonorHealth agreed to loan SPG $1,200,000 pursuant to the terms and conditions stated in the *Advance Loan Agreement*, *Promissory Note*, and *Security Agreement*, all dated April 14, 2022 (the "Loan Documents"). True and correct copies of the Loan Documents are attached hereto as Exhibit 4.

17. Section 1(B) of the Advance Loan Agreement provides as follows:

> B. <u>Conditions of Loan/Use of Funds.</u> The obligations of Group set forth in this Section 1.B and elsewhere throughout this Agreement, shall be performed by Group throughout the term of this Agreement, and are a condition precedent for HonorHealth's financial obligation to fund the Loan:

(1) Group waives its right under Section 6.2 of the HBS Agreement to receive a 180 days' prior written notice of termination from HonorHealth. For the avoidance of doubt, Group agrees that HonorHealth may terminate the HBS Agreement at any time for any reason upon written notice to Group.

(2) In the event that Group is unable to provide the Services under the HBS Agreement, Group shall not enforce any restrictive covenant with any Physician or Non-Physician Provider which restricts the Physician's or Non-Physician Provider's right or ability to render services at Hospital or which imposes a penalty, damages, buy out, or similar fee in exchange for waiving such limitations.

(3) Group shall use all of the proceeds of the Loan provided by HonorHealth hereunder to compensate Physicians for providing services at Hospital under HBS Agreement.

*See* Loan Documents, Exhibit 4, page 2.

18. Section 3 of the Advance Loan Agreement provides as follows:

3. TERMINATION. In the event of any breach by Group of any term or requirement of this Agreement, the HBS Agreement, or the Related Documents, HonorHealth may, at its option, terminate this Agreement and/or terminate the HBS Agreement with cause. Group expressly agrees that a breach of this Agreement constitutes a breach of the HBS Agreement and waives any right it may have under the HBS Agreement to cure any breach under the HBS Agreement.

Upon termination of this Agreement pursuant to this Section 3, HonorHealth's obligations under this Agreement shall automatically terminate and all the Repayment Amounts shall be automatically and immediately due and payable with interest, subject, however, to the forgiveness provision of Section 1.E. above.

*See* Loan Documents, Exhibit 4, p. 3.

19. On or about April 14, 2022, HonorHealth loaned $1,200,000 to the Debtor under the terms of the Loan Documents. *See* Replogle Declaration, ¶ 10.

20. After HonorHealth agreed to make the loan, SPG requested that the funds be wired to an account at Arizona Bank & Trust ("ABT"), instead of the Chase Bank account where HonorHealth normally made ACH payments to SPG. HonorHealth was told in an email from the SPG CFO that she "requested the account change to separate

and ensure that any payments made from this account are for the Hospitalist. Simply, for visibility on my part." *See* Replogle Declaration, ¶ 11.

21. HonorHealth wired the loan proceeds to the ABT account as requested, but the proceeds were not used to compensate Physicians for providing services under the HBS Agreement as agreed. On information and belief, when the funds were deposited, ABT immediately exercised an alleged right of set-off based on a default by the Debtor under the Debtor's loan from ABT, and ABT applied the $1,200,000 to pay down its loan. *See* Replogle Declaration, ¶ 12.

22. The HBS Agreement establishes the following staffing requirements: "To meet the [] service requirements and standards, [Debtor] shall provide appropriate Physician staffing to ensure that the average number of billable patient encounters a Physician has during a shift does not exceed 21." *See* HBS Agreement, Exhibit 1, Section 1.2. In other words, the Debtor is required to provide a sufficient number of physicians such that no single physician sees more than 21 patients during any shift. *See* Pope Declaration, ¶ 8.

23. Under the HBS Agreement, SPG hospitalists service an average of 250 to 260 patients per day. To meet this obligation, SPG must provide a minimum of fifteen (15) physicians daily (thirteen (13) physicians covering daily rounds; one (1) physician admitter in the Emergency Department; two (2) physicians to cover night shifts (one (1) physician per night). *See* Pope Declaration, ¶ 9.

24. Since the bankruptcy filing, HonorHealth has been advised by counsel for SPG that in the last sixty (60) days, thirteen (13) physicians have resigned their employment or contractual relationship with SPG, including seven (7) since the bankruptcy filing.

25. Upon information and belief, SPG currently has only six (6) employee/contractor physicians available to provide services to Hospital under the HBS Agreement. *See* Pope Declaration, ¶ 11.

26. Based on a document provided by the Debtor to HonorHealth, SPG owed

Case 2:22-bk-02385-EPB    Doc 21    Filed 04/26/22    Entered 04/26/22 13:18:25    Desc
Main Document    Page 6 of 11

its physicians over $3.5 million as of April 5, 2022.

27. SPG's inability to provide the requisite number of providers to service the HBS Agreement will negatively impact the service and the quality-of-care Hospital is able to provide to the community and will cause unnecessary risk to patient safety. *See* Pope Declaration, ¶ 12.

## II. ARGUMENT.

### A. The Court Should Order the Debtor to Either Immediately Cure and Assume the HSB Agreement, Or Reject the HSB Agreement to Allow HonorHealth to Locate and Retain Alternative Physician Providers.

The HSB Agreement is an "executory contract" within the meaning of Bankruptcy Code § 365, which section authorizes assumption of executory contracts and unexpired leases. Pursuant to Bankruptcy Code § 365(d)(2), the Court may compel assumption or rejection by a date certain.

The term "executory contract" is not defined by the Bankruptcy Code, but its definition is well-settled under applicable case law:

> [An executory contract is] one on which performance is due to some extent on both sides.... [I]n executory contracts the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other. *Marcus & Millichap Inc. v. Munple, Ltd (In re Munple)*, 868 F.2d 1129, 1130 (9th Cir.1989); *accord Griffel v. Murphy (In re Wegner)*, 839 F.2d 533, 536 (9th Cir.1988); *Pacific Express Inc. v. Teknekron Infoswitch Corp. (In re Pacific Express)*, 780 F.2d 1482, 1487 (9th Cir.1986) (employing the definition of an executory contract formulated by Professor Countryman in Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973); *Fenix Cattle Co. v. Silver (In re Select–A–Seat)*, 625 F.2d 290, 292 (9th Cir.1980).

*In re Texscan Corp.*, 976 F.2d 1269, 1271–72 (9th Cir.1992).

Section 365(d)(2) of the Code provides, in pertinent part, that: "... the court, on request of any party to such contract or lease, may order the Trustee to determine within a specified period of time whether to assume or reject such contract or lease." 11 U.S.C. § 365(d)(2). The "specified period of time" in Section 365(d)(2) is a "reasonable time",

such time to be determined by the facts and circumstances of each case. 2 Collier on Bankruptcy P 365.03(1) (15th ed. 1979). In determining what a reasonable time should be, the Court should consider "the nature of the interests at stake, the balance of hurt to the litigants, the good to be achieved, the safeguards afforded these litigants, and whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary." *See In re Lionel Corp.*, 23 B.R. 224, 225 (Bankr. S.D.N.Y. 1982).

Bankruptcy Code § 365(b)(1) provides as follows with respect to the assumption of executory contracts and unexpired leases:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee--
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

*Id.*

As a condition to the immediate assumption of the HSB Agreement, SPG must cure all defaults under the HSB Agreement, including using the $1,200,000 loaned by HonorHealth to actually pay physicians providing services under the HSB Agreement.

SPG must also compensate HonorHealth for all actual pecuniary loss suffered as a result of SPG's defaults, including HonorHealth's attorneys' fees and costs. And, SPG must provide HonorHealth adequate assurance that it has the ability to fully perform all of its obligations under the HSB Agreement now and in the future. If SPG cannot immediately assume HSB Agreement and perform all of its obligations thereunder, the Debtor should immediately reject the HSB Agreement so that HonorHealth can contract with an alternative group or provider that can provide the patient care required by the Hospital.

Unfortunately, it does not appear that SPG has sufficient physicians available to provide the 24/7, 365 days a year care to the Hospital's patients that it is required to provide under the HSB Agreement. And, SPG's inability to provide the requisite number of providers to service the HBS Agreement will negatively impact the service and the quality-of-care Hospital is able to provide to the community and will cause unnecessary risk to patient safety. Under the circumstances, the interests of the Hospital, SPG's patients, and their quality of care is and must remain of paramount importance and outweigh any financial interest of SPG in preserving any rights it has under the HSB Agreement. Therefore, unless the Debtor can prove that it has at least fifteen (15) physicians available every day post-petition to provide patient care and perform all of its other obligations under the HSB Agreement, the Court should order the Debtor to immediately reject the HSB Agreement.

**B.  HonorHealth is Entitled to Immediate Relief from the Automatic Stay for Cause.**

If SPG cannot immediately cure and assume the HSB Agreement, the Court should grant HonorHealth presently effective relief from the automatic stay, and all other applicable stays and injunctions, for cause pursuant to 11 U.S.C. § 362(d)(1) to allow HonorHealth to immediately terminate the HSB Agreement and locate and retain alternative providers.

## III. CONCLUSION.

WHEREFORE, HonorHealth respectfully requests that the Court enter an Order in the form attached hereto as Exhibit 5:

A. Compelling the Debtor to either immediately cure and assume the HSB Agreement, or reject the HSB Agreement;

B. If the Debtor cannot provide the requisite number of physicians and nurse practitioners to perform all of its obligations under the HSB Agreement post-petition, granting HonorHealth presently effective relief from the automatic stay, and all other applicable stays and injunctions, for cause pursuant to 11 U.S.C. § 362(d)(1) to allow HonorHealth to immediately terminate the HSB Agreement and locate and retain alternative providers; and

C. Granting HonorHealth such other and further relief as the Court deems just and proper under the circumstances.

Dated this 26th day of April, 2022.

**THE BURGESS LAW GROUP**

By: /s/Todd A. Burgess
 Todd A. Burgess (AZ 019013)
 Lindsi M. Weber (AZ 025820)

3131 East Camelback Road, Suite 224
Phoenix, Arizona 85016
Tel. (602) 806-2100
Email: todd@theburgesslawgroup.com
 lindsi@theburgesslawgroup.com

Attorneys for HonorHealth

ORIGINAL filed and COPIES of the foregoing served via the Court's CM/ECF Notification System this 26th day of April, 2022.

COPIES of the foregoing mailed this 26th day of April, 2022 to:

| | | |
|---|---|---|
| Arizona Bank & Trust<br>2036 E. Camelback Rd.<br>Phoenix, AZ 85016 | Bahram Hosseini<br>10036 E. Tamery Avenue<br>Mesa, AZ 85212 | BMF<br>157 Church Street, Suite 1971<br>New Haven, CT 06510 |
| Delta Bridge<br>18851 NE 29th Avenue, Ste 724<br>Miami, FL 33180 | Dr. Payam Azima<br>8153 E. Del Barquero Drive<br>Scottsdale, AZ 85258 | Dr. Gregory Gargiulo<br>4729 E. Tierra Buena Ln<br>Phoenix, AZ 85032 |
| Dr. Harjinder Bal<br>13125 E. Gold Dust Avenue<br>Scottsdale, AZ 85259 | Dr. Hieu Luu<br>6922 E. Wethersfield Rd<br>Scottsdale, AZ 85254 | Dr. John Ta<br>555 N. College Ave, Apt 5011<br>Tempe, AZ 85281 |
| Dr. Mark Okafor<br>8330 N. 19th Avenue, Suite 2084<br>Phoenix, AZ 85021 | Dr. Omid Dilmaghanian<br>9809 N. 128th Street<br>Scottsdale, AZ 85259 | Dr. Raad Hindosh<br>9322 N. 68th Place<br>Paradise Valley, AZ 85253 |
| Dr. Ryan Evans<br>6802 E. Paradise Pkwy<br>Scottsdale, AZ 85251 | Dr. Vinay Prabhakaran<br>10075 N. 1126th Street<br>Scottsdale, AZ 85259 | Global Funding Experts<br>2701 Queens Plaza North<br>Suite 802<br>Long Island City, NY 11101 |
| Honor Health<br>8125 N. Hayden Rd<br>Scottsdale, AZ 85258 | NewCo<br>90 Broad Street, Suite 903<br>New York, NY 10004 | Samson Horus<br>16 Driggs St. Staten Island<br>Staten Island, NY 10308 |
| Sheldora Law Firm<br>5925 W. Gambit Trail<br>Phoenix, AZ 85083 | Topps, LLC<br>11575 N. 87th Place<br>Scottsdale, AZ 85260 | |

By: */s/ Dana Troy*